**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **William Housman,** | : | **CIVIL ACTION NO. 3:20-cv-1198** |
| **Petitioner,** | : | |
| **v.** | : | **(JUDGE MANNION)** |
| **John E. Wetzel, et al.,** | : | |
| **Respondents.** | : | |

## MEMORANDUM

Presently before the court is the January 11, 2024, report and recommendation of Magistrate Judge Daryl F. Bloom. (Doc. 46.) Judge Bloom recommends that petitioner, William Housman's, petition for habeas corpus be denied as meritless and a certificate of appealability not be issued. Housman filed a timely objection (after a two-month extension for briefing by counsel) to the report arguing that Judge Bloom committed multiple errors in making his recommendation. However, based on the court's review of the report as described below, the court will overrule all of Housman's objections and adopt Judge Bloom's report and recommendation in its entirety.

## I. BACKGROUND

Since the report correctly states the procedural and factual background of this case, (Doc. 46, pp. 2-13), it will not be repeated fully herein. In short

petitioner, William Housman, was convicted in 2001 of the kidnapping and first-degree murder of 18-year-old Leslie White in Cumberland County, Pennsylvania, in 2000. He and his co-defendant, Beth Markman, were sentenced to death. Prior to trial both Housman and Markman confessed to kidnapping and murdering White. However, each claimed they were coerced to do so by the other. Housman moved to sever his trial from Markman's due to her confession, but his motion was denied. At trial both Housman and Markman's confessions were admitted with references to each other's names removed. However, Housman's confession contained two instances of non-redaction, in which Markman's name was referenced. On appeal, the Pennsylvania Supreme Court vacated Markman's convictions finding that the two non-redactions violated her rights under the confrontation clause. Housman also appealed his conviction and death sentence, challenging *inter alia* the trial court's denial of his motion to sever, but both his conviction and death sentence were affirmed by the Pennsylvania Supreme Court.

On June 17, 2011, Housman filed a timely petition under Pennsylvania's Post Conviction Relief Act ("PCRA"), and filed an amended, counseled petition on May 22, 2013. After three days of evidentiary hearings, Housman was granted PCRA relief in the form of new penalty trial on grounds Housman's counsel was ineffective for failing to present mitigating

evidence at the penalty phase. Still, the court found that Housman's claims regarding the guilt phase of his trial did not warrant relief. The Commonwealth appealed the grant of a new penalty trial and Housman appealed the denial of new guilt trial, but the Pennsylvania Supreme Court upheld the decision of the PCRA court. *Commonwealth v. Housman II*, 226 A.3d 1249 (Pa. 2020). Ultimately, the Commonwealth waived its right to proceed to a new penalty trial, and on January 22, 2021, the trial court resentenced Housman to a term of life imprisonment without the possibility of parole.

The present habeas corpus petition was initially filed during the pendency of Housman's state court proceedings on July 13, 2020. (Doc. 1.) As such the matter was stayed pending the outcome of his state court appeals. On January 21, 2022, Housman filed a renewed memorandum of law raising five grounds for relief: (1) the trial court's error in refusing to sever his and Markman's trials, as well as counsel's failure to effectively litigate the severance issue; (2) trial counsel's failure to object to the jury charge on accomplice liability and conspiracy; (3) trial counsel's failure to present evidence regarding White's cause of death; (4) a violation of Housman's Fifth Amendment right when his confession was admitted at trial; and (5) the effect of the cumulative errors resulting in prejudice.

- 3 -

## II. LEGAL STANDARD

### A. Reports and Recommendations of Magistrate Judges

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. 636(b)(1); *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard of review is *de novo*, the district court "may also, in the exercise of sound judicial discretion, rely on the Magistrate Judge's proposed findings and recommendations." *Bynum v. Colvin*, 198 F. Supp 3d 434, 437 (E.D. Pa. 2016) (citing *United Stated v. Raddatz*, 447 U.S. 667, 676 (1980)).

### B. State Prisoner Habeas Relief

A petition for writ of habeas corpus is the exclusive federal remedy for a state prisoner challenging the "very fact or duration" of his confinement and seeking "immediate release or a speedier release from that imprisonment." *Preiser v. Rodriguez,* 411 U.S. 475, 498-99 (1973); *Leamer v. Fauver,* 288 F.3d 532, 542-44 (3d Cir. 2002). A district court is authorized to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a) (2006).

§2254 also mandates that federal court owe deference to the factual findings and legal rulings made by state courts in the course of state criminal proceedings. With respect to legal rulings by state courts, under §2254(d), habeas relief is not available to a petitioner for any claim that has been adjudicated on its merits in the state courts unless it can be shown that the decision was either: (1) "contrary to" or involved an unreasonable application of clearly established case law; *see* 28 U.S.C. §2254(d)(l); or (2) was "based upon an unreasonable determination of the facts," *see* 28 U.S.C. §2254(d)(2).

## III. DISCUSSION

Judge Bloom found and this court agrees that all five of Housman's claims for relief were in some fashion raised before and considered by state courts, whose determinations were not contrary to clearly established law or based on an unreasonable determination of facts. Housman objects not only to Judge Bloom's finding on each of his claims for relief, but also the applicable legal standard.

### A. Judge Bloom's Legal Standard

In addition to the legal standard summarized above Judge Bloom notes that "[t]ypically, habeas relief will only be granted to state prisoners in those

- 5 -

instances where the conduct of state proceedings led to a 'fundamental defect which inherently results in a complete miscarriage of justice' or was completely inconsistent with rudimentary demands of fair procedure." (Doc. 46, p. 14)(quoting *Reed v. Farley*, 512 U.S. 339, 354 (1994)). Housman objects to the application of *Reed* because the petitioner's claim in that case was for a violation of a federal statute, and he does not raise any claims regarding federal statutes here. As such the instant petition contends that to the extent Judge Bloom "relied upon this inapplicable legal standard in 'assessing Housman's petition' (Doc. 46, p. 21), the magistrate[1] erred." Regardless, based on the court's review, Judge Bloom's recommendations did not turn on *Reed* but rather the undisputed language from §2254 that only authorizes a federal court to grant a state petitioner habeas relief when the state court rulings in their case were contrary to clearly established law

---

[1] In this and all other instances where Housman's counsel refers to Judge Bloom as "the magistrate" the court wants to remind counsel that the title "magistrate" no longer exists in the U.S. Courts, having been changed from "magistrate" to "magistrate judge" in **1990**. Judicial Improvements Act of 1990, 104 Stat. 5089, Pub. L. No. 101-650, §321 (1990) ("After the enactment of this Act, each United States magistrate . . . shall be known as a United States magistrate judge."). Plaintiffs' counsel is reminded to use the correct title in the future, when referring to Judge Bloom or any other Magistrate Judge.

or based on an unreasonable determination of facts. Accordingly, the court will overrule Housman's objection to Judge Bloom's legal standard.

**B.    The    Trial    Court's    Refusal    to    Sever    and    Counsel's Ineffectiveness in Litigating this Issue**

Housman argues that the trial court erred when it refused to sever his trial from Markman's because it resulted in prejudicial evidence being admitted against him at trial and his trial and appellate counsel were ineffective for failing to properly litigate this issue. Housman initially raised this argument on direct appeal and it was rejected by the Pennsylvania Supreme Court in 2009. Specifically, the Pennsylvania Supreme Court, applying the appropriate abuse of discretion standard, found that the trial court did not abuse its discretion in denying severance where Housman and Markman's defenses were not so antagonistic as to warrant severance. *Housman I*, 986 A.2d at 835.

The court also found that any prejudice to Housman from the evidence introduced because of a joint trial was offset "by his own *admission that he violently strangled White to death* in his living room after luring her there under false pretenses, drove to Virginia with her lifeless body in her Jeep, and subsequently deposited her body in the trunk of an abandoned car." *Id*. (emphasis in original). The court reasoned that this evidence alone was

enough to apprise the jury of Housman's capacity for violence. Furthermore, the court found that the trial court gave a limiting instruction regarding the evidence submitted by Markman.

Housman again argued this claim under the PCRA, in the terms of ineffective assistance counsel, but the PCRA court found that Housman's claims rested on the same factual basis as his claim of trial court error, which the Pennsylvania Supreme Court found to be meritless. The Pennsylvania Supreme Court affirmed the PCRA court's findings and again reiterated that any prejudice Housman may have suffered "did not outweigh the overwhelming and properly-admitted evidence of his guilt." *Housman II*, 658 226 A.3d at 1263. Furthermore, the Pennsylvania Supreme Court found that counsel was not ineffective in not objecting to specific hearsay evidence Housman alleged was improperly admitted due to the trial court's refusal to sever because counsel had a reasonable basis for not objecting to the alleged hearsay statements.

Judge Bloom concluded that the state courts' prior determination on these arguments were not contrary to clearly established law or based on a reasonable determination of fact. Nonetheless Housman objects arguing that Judge Bloom erred because he 1. Wrongly accepted the state court's conclusion that Housman and Markman's defenses were not antagonistic, 2.

- 8 -

Did not apply the proper prejudice analysis, 3. Failed to acknowledge a later-in-time jury instruction that nullified the trial court's earlier limiting instruction, and 4. In also concluding that trial counsel had a reasonable basis for not objecting to alleged hearsay evidence.

### 1. Antagonistic Defenses

Housman argues that his and Markman's defenses were mutually exclusive and in turn antagonistic because in his version of events Markman forced him to kill White because Housman was cheating on her with White, while in Markman's version she simply did what she was told because she was in an abusive relationship with Housman. As such, both defendants argued that they lacked the specific intent to kill but instead participated in the homicide only because they were coerced to do so by the other. Regarding Markman's appeal, the Pennsylvania Supreme Court also found that "[her] and Housman's accounts of the central facts were irreconcilable." *Commonwealth v. Markman*, 916 A.2d 586, 603 (Pa. 2007). The court found that the "degree to which the jurors would believe" these contrasting accounts would determine whether the defendant "acted with a specific intent to kill" and was thus guilty of first-degree murder. *Id*. Housman claims it was patently unreasonable for the state court to reach the opposite conclusion on his appeal, and Judge Bloom erred in finding otherwise.

Moreover, Housman claims Judge Bloom erred in not considering whether the prior bad acts and bad character evidence submit by Markman in support of her defense that Housman abused her would have been admissible had he been tried alone.

The court disagrees with Housman's characterizations. As Judge Bloom noted in his report the Pennsylvania Supreme Court did not find that Housman was not prejudiced by the trial court's refusal to sever but rather that this prejudice was offset by his own confession of brutally murdering White and carelessly disposing of her body. Thus, its conclusions regarding Markman's appeal are not inconsistent with its conclusions regarding Housman's now multiple appeals. Likewise, Judge Bloom notes that the Housman's confession alone was enough to appraise the jury of his capacity for violence. Accordingly, even if the evidence of Housman's abuse of Markman was inadmissible it was not necessary for the jury to convict him, and the court will overrule his objection on this issue.[2]

---

[2] Housman cites *Zafiro v. United States*, for the proposition that severance is required "when evidence . . . that would not be admissible if a defendant were tried alone is admitted against a codefendant." 506 U.S. 534, 538–39 (1993). Notwithstanding that this case addressed severance under the Federal Rules of Criminal Procedure, not the analogous Pennsylvania rules, the Supreme Court in this case specifically declined "to adopt a bright-line rule, mandating severance whenever codefendants have conflicting defenses" because "mutually antagonistic defenses are not prejudicial *per*

*(footnote continued on next page)*

## 2. Judge Bloom's Prejudice Analysis

Housman acknowledges that in finding no prejudice, Judge Bloom and prior state courts relied on his confession to conclude the Commonwealth presented overwhelming evidence of his guilt. However, he argues that the proper inquiry regarding prejudice is not whether there was sufficient evidence to support his conviction but rather "whether the error had a substantial influence on the verdict despite sufficient evidence to support the result apart from the error." *Yohn v. Love*, 76 F.3d 508, 523 (3d Cir. 1996)(citing *Kotteakos v. United States*, 328 U.S. 750, 764 (1946)). As such Housman asserts Judge Bloom wrongly discounted the influence the trial court's refusal to sever had on the jury by allowing the admission of prejudicial evidence about his abuse of Markman that in turn impugned his credibility and undermined his defense that he killed White because of Markman's coercion. According to Housman without such evidence, the jury would have found his defense more credible.

Again, the court disagrees with Housman's characterizations. Judge Bloom did not deny that the trial court's refusal to sever influenced the jury

---

*se.*" *Id*. Thus, any mutual antagonism of Housman and Markman's defenses alone did not require severance and the state courts prior determinations were not contrary to clearly established law.

- 11 -

because the commonwealth otherwise submitted sufficient evidence but rather that the evidence presented by the Commonwealth was so overwhelming the jury could have convicted Housman irrespective of any evidence submitted by Markman. Accordingly, even if Markman submitted no prejudicial evidence influencing the jury and jury found Housman more credible the other evidence was so overwhelming that the jury would have still convicted him, and the court will overrule his objection on this issue.

### 3. The Trial Court's Subsequent Jury Instruction

Housman also acknowledges the state court finding that the trial court's instruction limiting the jury's consideration of bad acts and bad character evidence submitted by Markman was "sufficient to eliminate any alleged prejudice stemming from Markman's assertions of [Mr. Housman]'s abuse." *Housman I*, 986 A.2d at 836. However, he argues that the state and in turn Judge Bloom ignored the trial court's subsequent instruction delivered during its final jury charge, which encouraged the jury to consider all the "facts" that Markman and the Commonwealth had presented. Housman, echoing Justice Baer's dissent from his direct appeal, takes the position that the jury would have assumed the subsequent instruction overrode the earlier instruction. *Housman I*, 986 A.2d at 851 (Baer, J., dissenting). Nonetheless, a dissent does not make a state's court finding unreasonable. Nor does

Housman submit any authority that a court must assume a subsequent jury instruction overrides or supersedes a prior jury instruction. Moreover, the Pennsylvania Supreme Court found the prior limiting instruction was sufficient but not necessary to eliminate any alleged prejudice. Accordingly, any subsequent confusion about the scope of that instruction would not be dispositive, especially given the otherwise overwhelming evidence of Housman's propensity for violence, and the court will overrule his objection on this issue.

### 4. Counsel's Failure to Object to Hearsay

Housman argues the Judge Bloom erred and state courts were unreasonable in concluding that trial counsel had a "reasonable basis" for not objecting to the hearsay evidence that was "cumulative" of his own confession. *Housman II*, 226 A.3d at 1264–65. Housman asserts that there is no "cumulativeness" exception to the general inadmissibility of hearsay evidence and had counsel properly litigated this issue there is a reasonable likelihood that there would have been a different result at trial or on direct appeal. Housman is correct that there is no "cumulativeness" exception to the hearsay rule, but the court disagrees that there is a reasonable likelihood absent such evidence the jury would not have convicted him.

- 13 -

The specific piece of hearsay at issue here is the testimony of Melissa Martin, a co-worker of White, recounting a conversation she had with Chad Wriglesworth, her, and White's supervisor at Wal-Mart the night Housman kidnapped and murdered her. Martin testified that White asked Wriglesworth if she could leave work early because Housman (falsely) told her his father had died and she wanted to be with him. Housman considers this testimony triple hearsay and argues his trial counsel should have objected to it. The Pennsylvania Supreme Court disagreed because it merely repeated Housman's own much more damning confession that he lied to White about his father's death to lure her to his home where he subsequently strangled her to death. Regardless of whether it was reasonable for counsel to object to this evidence it does not change the fact that it was redundant of evidence already going to the jury. Accordingly, it would be unreasonable to find absent such evidence the jury would not have convicted Housman and the court will overrule his objection on this issue.

## C. Ineffective Assistance of Counsel – Failure to Object to the Jury Instructions for Accomplice and Conspirator Liability

Housman argues that his counsel was also ineffective for failing to object to the trial court's jury instructions on accomplice liability and conspiracy. He contends that the challenged instruction relieved the

- 14 -

Commonwealth of its burden to prove he had specific intent to kill for first-degree murder. The PCRA court denied this claim because the case Housman relied on was decided after Housman's trial, *Laird v. Horn*, 414 F.3d 419, 425 (3d Cir. 2005), was decided after Housman's trial, and that his counsel could not be deemed ineffective for failing to predict a change in the law. The Pennsylvania Supreme Court affirmed noting that even if counsel had been deemed ineffective for failing to object to the disputed instruction, given the overwhelming evidence against Housman, it was "inconceivable that the jury would have convicted Housman merely as an accomplice to Markman, rather than as a principle to the crime." *Housman II*, 226 A.3d at 1268.

Judge Bloom found that these determinations were not contrary to established law or based on an unreasonable determination of fact. Nonetheless Housman objects arguing that Judge Blooms erred because he 1. Failed to address the inadequacy of the jury instructions that allowed the jury to find Housman guilty if it found that either he or his codefendant possessed the specific intent to kill, 2. Failed to acknowledge trial counsel was ineffective for failing to object to the incorrect jury charge, and 3. Erroneously concluded that Housman was not prejudiced by the allegedly unconstitutional jury instructions.

- 15 -

### 1. The Inadequacy of the Trial Court's Jury Instructions

Housman argues that Judge Bloom failed to analyze the trial court's jury instructions in light of *Laird*, which is binding precedent on this court, failed to address the trial court's instruction on conspiracy liability, which failed to advise the jury it had to make a finding of specific intent to kill, and failed to address the trial court's first-degree murder instruction, which also did not make clear that the jury must find each defendant possessed specific intent to kill. While Housman is correct that the *Laird* case presents a number of factual analogies to the present case and is binding on this court, Judge Bloom like the state courts who had previously heard this argument recognized the *Laird* case was decided after Housman was convicted and as such did not need to apply it to the disputed jury instruction insofar as it pertains to Housman's ineffective assistance of counsel claim.[3]

Likewise, Judge Bloom and the state courts did address whether the inclusion of the phrase "or to make it easier to commit all these crimes" in the trial court's conspiracy instruction relieved the Commonwealth of its burden in finding that the overwhelming evidence of Housman's specific intent to kill again made it "inconceivable that the jury would have convicted

---

[3] Like the PCRA court this court will not speculate as to whether the claim could have been properly raised pending direct appeal or in some other way.

Housman merely as an accomplice to Markman, rather than as a principal in the crime." *Housman II*, 226 A.3d at 1268.

As to the trial court's first-degree murder instruction, Judge Bloom and the state court noted, that at the penalty phase, Housman's principal role in the White's murder was highlighted by the fact the jury found Markman participation in the murder to be relatively minor. *Housman II*, 226 A.3d at 1268 n. 13. As such Housman's contention that the jury could have wrongly convicted him by believing only Markman had specific intent is of no moment. The jury found Housman not Markman was the driving force in White's murder. Accordingly, even if the jury thought only one defendant had specific intent to kill White that Defendant was Housman not Markman and the court will overrule his objection on this issue.

### 2. Trial Counsel's Failure to Object to Jury Instructions

Housman argues that contrary to Judge Bloom' assessment the state court findings that counsel was not deficient because *Laird* was decided two years after Housman's case and counsel cannot be deemed ineffective for failing to predict subsequent changes in the law was unreasonable because *Laird* followed a line of similar cases. *See, e.g., Smith v. Horn*, 120 F.3d 400, 410 (3d Cir. 1997); *Commonwealth v. Huffman*, 638 A.2d 961, 964 (Pa. 1994); *Commonwealth v. Bachert*, 453 A.2d 931, 935 (Pa. 1982). Housman

is correct that neither the state court nor Judge Bloom addresses these cases which predated his trial. But the Third Circuit has found a failure to properly instruct a jury on specific intent is subject to harmless error analysis. *Bronshtein v. Horn*, 404 F.3d 700, 712 (3d Cir. 2005) citing *Smith,* 120 F.3d at 416–17. Given the overwhelming evidence of Housman's specific intent such an error here could be considered harmless. Accordingly, even if Housman's counsel could be deemed ineffective it would not disturb his conviction and the court will overrule his objection on this issue.

### 3. The Jury Instructions' Prejudice to Housman

Housman argues that had counsel objected to the challenged jury instructions, there is a reasonable probability that at least one juror would have had a reasonable doubt as to his guilt. This court like Judge Bloom and the state courts disagree. As previously discussed, the alleged errors in the trial court's jury instruction were harmless. Housman further argues Judge Bloom failed to account for the impact of the evidence Markman had told her probation officer and friend she was going to kill White, consider that trial counsel's defense strategy was to argue Housman lacked specific intent to kill making it more likely the jury convicted him without finding he had specific intent, and address the Pennsylvania Supreme Court's decision on

- 18 -

Markman's appeal that "the evidence supported a finding of [Markman] guilt[y] as a principal or an accomplice." *Markman*, 916 A.2d 586.

However, Markman's comments that she was going to murder White does not change the fact that Housman confessed to actually murdering White. Likewise, regardless of trial counsel's strategy the overwhelming evidence yet again made it "inconceivable that the jury would have convicted Housman merely as an accomplice to Markman, rather than as a principal in the crime." *Housman II*, 226 A.3d at 1268. And finally, the alleged inconsistency in the Pennsylvania Supreme Court's decisions on Markman and Housman's appeals do not support a finding here that an error in the trial court's jury instructions was anything but harmless. The Pennsylvania Supreme Court found a jury *could* have convicted Markman as principal or accomplice but at the penalty phase the jury found that Markman only played a relatively minor role in the murder. Partially on that basis state courts and now Judge Bloom have repeatedly affirmed that Housman cannot show prejudice and or that there is a reasonable probability that the outcome of his trial would have been different. Accordingly, this court agrees the trial court's jury instructions did not prejudice Housman and will overrule his objection on this issue.

**D. Ineffective Assistance of Counsel – Medical Examiner Evidence**

Housman argues that his counsel was additionally ineffective for failing to introduce evidence from the medical examiner that White's death was caused by the gag in her mouth, rather than being choked with a wire and Housman's arm. He further asserts that the prosecution committed misconduct when it elicited misleading testimony with respect to White's cause of death at trial and failed to correct it. The PCRA court rejected this claim noting that at the evidentiary hearing, Housman's counsel testified that he had a strategic basis for not cross examining, the medical expert, Dr. Venuti. Further the PCRA court reasoned, and the Pennsylvania Supreme Court agreed that even if counsel was deemed ineffective for failing to introduce this evidence the outcome of the trial would not have been different.

Judge Bloom found that these determinations were not contrary to established law or based on an unreasonable determination of fact. He further noted that the evidence presented at trial, including Dr. Venuti's testimony, established that White died of asphyxiation, and both Markman and Housman played a part in cutting off White's airway—Markman by placing a gag in White's mouth, and Housman by pulling up on White's neck

with a wire forcing the gag further into White's mouth. Nonetheless Housman objects arguing that Judge Blooms erred 1. In concluding the evidence established that Housman's action contributed to the blocking of White's airway, 2. In affirming the state court's finding that counsel was reasonable for not questioning the medical examiner on the topic, and 3 In his prejudice analysis of both Housman's claims of counsel's ineffectiveness and prosecutorial misconduct.

### 1. The Evidence Housman's Actions Contributed to White's Asphyxiation

Housman argues that Judge Bloom's conclusions regarding the evidence of his contribution to White's asphyxiation relied on the medical examiner's reference to possible, but indeterminate, contributing factors and therefore was inaccurate based on the factual record. Specifically, Housman claims that Judge Bloom and the state courts unreasonably relied on the medical examiner's testimony that the wire Housman used "could have forced the gag further back into the victim's mouth, obstructing the airway," to rebut Housman's contention that the gag, which Markman had forced into White's mouth, was the only certain cause of death. *Housman II*, 226 A.3d at 1271.

However, a reading of the subsequent paragraphs of the Pennsylvania Supreme Court's opinion reveals that the court did not rely entirely on the medical examiner's testimony. The court found that "Housman's own admission that he strangled the victim with a speaker wire, was sufficient to permit the jury to conclude that he intentionally, deliberately, and with premeditation participated in the murder of Leslie White." *Id*. Thus, "even if the actual cause of the victim's death was asphyxia due to the cloth in her mouth and the gag around her face, and not the speaker wire around her neck, the evidence clearly was sufficient to convict Housman of first-degree murder. *Id.* citing *Commonwealth v. May*, 887 A.3d 750, 757 (2005) (Appellant's active participation in the killing of two victims, including cutting the throat of and shooting one of the victims, was sufficient to prove that he harbored a specific intent to kill, such that, even if he did not inflict the specific injuries that caused each of the victim's deaths, he properly was convicted of first-degree murder because the evidence proved he clearly shared that intent with his accomplice); *Commonwealth v. Daniels*, 963 A.2d 409, 428 (2009)(Rejecting claim that counsel was ineffective for failing to secure testimony of a pathologist as to specific cause of death, and emphasizing that "PCRA defense experts' opinions on the specific cause of death say little about appellees' intention−which was a very different question.... [A]ppellees

controlled the circumstances surrounding [the victim's] death every step of the way and ... those circumstances fully supported a finding of an intent to kill beyond a reasonable doubt.") Accordingly, this court agrees with Judge Bloom and will overrule Housman's objection on this issue.

## 2. Counsel's Questioning of the Medical Examiner

Housman argues that Judge Bloom and the state courts' conclusion that counsel had a strategic reason for not questioning the medical examiner more thoroughly about White's cause of death were unreasonable. Specifically, he asserts that the strategy counsel testified about at the PCRA hearing to stay out of this issue given that the evidence indicated both Housman and Markman played a role in White's death is inconsistent with the record in that counsel did question Dr. Venuti about the absence of ligature marks on White's neck or other signs of strangulation. As such Housman characterizes counsel's strategy as an "after-the-fact rationalization" of his ineffectiveness.

While Housman is correct that Judge Bloom did not address this inconsistency, it has no bearing on his ultimate conclusion on this issue because Housman was not prejudiced by counsel's alleged ineffectiveness. Housman confessed to strangling White. On that basis alone the jury could have convicted him of first-degree murder. Accordingly, Dr. Venuti's

testimony and counsel's cross-examination of her were not dispositive and the court will overrule Housman's objection on this issue.

### 3. Judge Bloom's Prejudice Analysis

Housman argues Judge Bloom and the state court again applied the wrong standard in assessing the prejudice from his counsel's alleged ineffectiveness. According to Plaintiff Judge Bloom and the state courts' sufficiency of the evidence analysis is contrary to clearly established federal law because the proper standard is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 693 (1984). However, ever under this standard Housman was not prejudiced. There is no reasonable probability that aside from counsel's failure to further cross-examine Dr. Venuti about the cause of White's death the jury would not have convicted Housman of first-degree murder because Housman also confessed to strangling White. Accordingly, Housman was not prejudiced by counsel's alleged ineffectiveness under his own standard and the court will overrule his objection on this issue.

### E. Miranda Violations

Housman argues that his confession is inadmissible because he did not waive his *Miranda* rights, and that even if he did waive his rights, any

waiver was not knowing and voluntary. He asserts that prior to giving police his inculpatory statement, he invoked the right to counsel and to remain silent, and after he started taking to the police, he did not understand what constituted a waiver. On direct appeal, Housman claimed that he was denied his right to counsel when he was questioned about White's murder, in connection with his arrest for stealing her Jeep. The Pennsylvania Supreme Court denied this claim finding that Housman "received *Miranda* warnings and waived them before making incriminating statements. Thus, there was no *Miranda* violation warranting suppression of his statements to police." *Housman I*, 986 A.2d at 839-40.

Judge Bloom found that this was a reasonable application of the law because Housman's recorded confession indicates that officers informed him several times that if he did not wish to speak to them, they would leave the room. The officers further advised him of his right to remain silent and counsel, and that he could re-invoke his rights at any time, and they would stop questioning him. Housman also signed a waiver of his Miranda rights before confessing to murdering White with Markman. Nonetheless Housman objects arguing that Judge Blooms erred 1. When he concluded that Housman received Miranda warnings and waived them and 2. By not

acknowledging Housman did not understand the meaning of the word "waiver" when officers took his confession.

### 1. Housman Receipt and Waiver of his Miranda Rights

Housman argues that Judge Bloom's interpretation of his recorded confession is incomplete and erroneous in that officer's continued to question Housman even after he informed them that he did not wish to speak or waive his Miranda rights. In support of this argument Housman cites out of context two lines from his confession transcript:

> OLIVER: Having these rights in mind, do you wish to waive them at this point and talk to us in here right now?
>
> HOUSMAN: Uh, naugh, you said, I could stop at any time.

(Doc. 4 at 5)

However, a complete reading of the transcript reveals that Housman was not refusing to speak with officers. In fact, it reveals that Housman agreed to waive his rights and, in the exchange, cited above was actually only asking for clarification as to his ability to re-invoke his rights. The complete exchange reads as follows:

> OLIVER: This is, this, listen, this is, I'm advising you of your Constitutional Rights. Before we ask you any questions, you must understand your rights. First, you have the right to remain silent,

Secondly, anything you say can be used in court. Third, if you, third, I'm really having a hard at 4:20 in the morning. I apologize. You have the right to talk to a lawyer for advice before we ask you any questions and to have a lawyer with you during questioning. If you cannot afford a lawyer, one will be appointed for you without cost to you before any questioning if you wish. And if you choose to answer questions, you can stop answering at any time. So if you're agreeing to talk to us here at the beginning, later on you decide you don't want to, you can quit. Okay.

HOUSMAN: Okay.

OLIVER: You understand what I've just read to you?

HOUSMAN: Yes sir.

OLIVER: Having these rights in mind, do you wish to waive them at this point and talk to us in here now.

HOUSMAN: Uh, naugh, you said I could stop at any time.

OLIVER: You can stop at any time.

HOUSMAN: If I waiver them though…

OLIVER: No, if you waive them, you can still stop at any time.

(Id.)

Accordingly, it's Housman's interpretation of the recording not Judge Bloom's that is incomplete and erroneous and the court will overrule his objection on this issue.

### 2. Housman's Understanding of the Word "Waiver"

Housman argues that to the extent he waived his Miranda rights, the waiver was not voluntary, knowing, and intelligent because he did not understand the meaning of the word "waiver." Specifically, he points to the section of his confession transcript where he expressed confusion over the meaning of the word "waiver" saying, "I just say it was confusing because you waiver and I know waiver means whether or not." (Doc. 4, p. 6) However, contrary to Housman's assertions this confusion does not indicate he did not understand his rights. The full transcript indicates that Housman was read his rights, affirmed that he understood those rights, and was told multiple times that once he started talking he could stop at any time. Accordingly, regardless of whether Housman knew the meaning of the word waiver, he knew his rights and that once he started talking despite those rights he could stop talking at any time, and the court will overrule his objection on this issue.

### F. Cumulative Errors

Housman argues that the cumulative errors of the trial court and his trial and appellate counsel described above warrant habeas relief. However,

Judge Bloom concluded that Housman's claims regarding his counsel's ineffectiveness and the trial court's errors to be without merit. *See Aponte v. Eckard*, 2016 WL 8201308, at *20 (E.D. Pa. June 3, 2016) ("The cumulative error doctrine requires the existence of 'errors' to aggregate. Absent such errors by counsel, the cumulative error doctrine does not apply.") Nonetheless, Housman claims that Judge Bloom assumed the trial court's first-degree murder instruction was in fact erroneous and disposed of that claim on prejudice alone, so it was wrong for him to later assert there were no errors to aggregate.

To the extent Judge Bloom or this court found that the trial court or Housman's counsel committed errors as discussed above this court finds that those errors were harmless because absent all of these alleged errors the jury still could have convicted Housman of first-degree murder based on his confession alone. Accordingly, even aggregating any errors in his underlying conviction Housman is not entitled to relief based on the cumulative error doctrine and the court will overrule his objection on this issue.

### G. Certificate of Appealability

To receive a certificate of appealability a petitioner must demonstrate that reasonable jurists would find the district court's assessment of [his/her]

constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484, (2000). Here Judge Bloom concluded that Housman has made no such showing, nor can he given the state court findings and clear evidence of his factual guilt. Nonetheless Housman argues that jurist of reason could debate Judge Bloom's recommended disposition. In support of this claim, he cites Justice Baer's dissent on his initial direct appeal. *Housman I*, 986 A.2d at 848 (Baer, J., dissenting).

While some of the arguments raised here were also raised on direct appeal, the inquiry here is not whether reasonable jurist would disagree on the disposition of Housman direct appeal or even on Judge Bloom's report and recommendation but on this court's disposition of the instant habeas petition. Furthermore, much has changed since the Pennsylvania Supreme Court originally affirmed Housman's conviction. First and foremast his death sentence has been vacated and his case was re-reviewed under the PCRA, including a three-day evidentiary hearing, that confirmed the Pennsylvania Supreme Court's majority decision as it pertains to the claims at issue here. As a result, the Pennsylvania Supreme Court **including Justice Baer** affirmed the PCRA court's findings and denial of a new guilt trial. Accordingly, no reasonable jurist could not disagree with this court's disposition of the instant petition and a certificate of appealability will not be issued.

## IV. CONCLUSION

Based on the aforesaid Housman's objections (Doc. 51) will be overruled, Judge Bloom's report and recommendation (Doc. 46) will be adopted in its entirety as the decision of the court, Housman's petition for habeas corpus (Doc. 1) will be denied, a certificate of appealability will not be issued, and the Clerk of Court will be directed to close this case.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: August 1, 2024**
20-1198-03